**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

# CAPITAL CASE

MARCEL WAYNE WILLIAMS                                                                    PETITIONER

v.                                              NO. 5:02CV00450 JLH

LARRY NORRIS, Director,
Arkansas Department of Correction                                                     RESPONDENT

## OPINION AND ORDER

Marcel Wayne Williams was convicted of capital murder, kidnapping, rape, and aggravated

robbery.  He was sentenced to death by lethal injection.  He has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  He has raised the following claims for relief in his amended

petition:

> 1.      The prosecuting attorneys' intentional use of peremptory strikes in a racially
> discriminatory manner denied petitioner a fair trial;
>
> 2.      Errors and omissions by trial counsel during the penalty phase of the trial
> deprived petitioner of his constitutional rights to the effective assistance of counsel
> and to a fair trial;
>
> 3.      Errors and omissions by trial counsel during the guilt phase of the trial
> deprived petitioner of his constitutional rights to the effective assistance of counsel
> and to a fair trial;
>
> 4.      Petitioner was denied a fair trial before an impartial tribunal;
>
> 5.      Petitioner's right to a fair trial was violated by the presence on his jury of
> individuals who could not sit as fair and impartial jurors;
>
> 6.      Petitioner's constitutional rights were violated in this capital case due to the
> unfairly prejudicial atmosphere in which his trial and sentencing took place;
>
> 7.      The admission into evidence of the statement illegally obtained from
> petitioner by law enforcement violated petitioner's constitutional rights;

8.      Petitioner was denied a fair trial due to the misconduct of his prosecutors;

9.      Allowing the jury to consider as an aggravating circumstance the felony conviction that petitioner received at age 15 violated the Eighth and Fourteenth Amendments;

10.     Petitioner's conviction and sentence were the product of race discrimination;

11.     Petitioner's death sentence was improperly supported by the jury's finding that the killing took place for purposes of pecuniary gain;

12.     Errors and omissions by state appellate and post-conviction counsel deprived petitioner of his constitutional rights to effective assistance on appeal and on state collateral review;

13.     Petitioner was denied a fair trial due to the cumulative effect of the constitutional errors that infect his trial and sentence;

14.     Petitioner's death sentence is constitutionally prohibited because it cannot be carried out without the infliction of cruel and unusual punishment;

15.     Petitioner's capital trial was conducted before state judicial officers dependent upon popularly-contested elections;

16.     Insufficient evidence was presented to support the finding of the aggravating circumstance that the murder was especially cruel and depraved;

17.     Petitioner's death sentence violates the constitutional prohibition on cruel and unusual punishment;

18.     The sentencing provisions of Arkansas' capital murder statutes violate the constitution;

19.     Petitioner's sentence is invalid under international law; and

20.     Should Petitioner become incompetent to be executed, his death sentence could not be carried out.

## I.      THE FACTS OF THE CASE.

The facts of this case were recounted by the Arkansas Supreme Court on direct appeal from

Williams's conviction:

On November 20, 1994, Stacy Errickson, the victim, on her way to work, stopped at

2

the Jacksonville Shellstop for gas.  The time was approximately 6:45 a.m.  Williams approached Errickson's vehicle, drew a firearm, and forced her to move from the driver's seat to the passenger's side.  Williams then drove Errickson's car away from the convenience store.  Williams then took Errickson to several automated teller machines and coerced her to attempt withdrawals.  A total of eighteen transactions yielded the sum of $350.  The last transaction occurred at 7:37 a.m.  These transactions were recorded by security cameras at several banking facilities.  Stacy Errickson did not make it to work that day, nor did she pick up her child from the babysitter at the end of the day.

Police arrested Williams on an outstanding warrant on November 29, 1994, and questioned him based on physical evidence linking him to two other assaults on women.  During the course of an intensive interrogation lasting some thirteen hours, Williams admitted having abducted Errickson from the convenience store and robbing her through ATM withdrawals.  However, he denied any sexual assault and assured the officers that to the best of his knowledge Errickson was alive.  Appellant attempted to implicate others as accomplices asserting that they were the ones responsible for physically harming her.  Based upon information Williams supplied, the police recovered a sheet matching Williams description as one he used in connection with the abduction and also recovered a gold ring which Williams identified.  On December 5, 1994, police discovered Stacy Errickson's body buried in a shallow grave.  Other evidence adduced at trial indicated that witnesses Tammy Victoria and Tammy Keenahan identified Williams as a man they had seen on the morning of November 20, 1994, at the Shellstop.  They also testified that after they left the station he followed them in a car and attempted to stop them until they sought refuge at the air force base.  Williams subsequently returned to the Shellstop and abducted Stacy Errickson.

On April 5, 1995, the Pulaski County prosecutor by felony information charged Williams with capital murder, kidnapping, rape, and aggravated robbery.  The information asserted that Williams had four prior felony convictions.  The Pulaski County Circuit Court tried Williams on these charges beginning on January 6, 1997.  Appellant was convicted on all counts.  During the sentencing phase of the trial the prosecutor introduced evidence in support of three aggravating circumstances, and the appellant offered one mitigating circumstance.  The jury found that all three alleged aggravating circumstances existed beyond a reasonable doubt and that Williams's mitigating circumstance was also established.  In balancing these findings the jury recommended a sentence of death, which the trial court accepted.

*Williams v. State*, 338 Ark. 97, 105-06, 991 S.W.2d 565, 568-69 (1999).

## II.    WILLIAMS PURSUED POST-CONVICTION RELIEF IN THE STATE COURTS.

Williams petitioned for post-conviction relief under Rule 37 of the Arkansas Rules of Civil

Procedure.  The circuit court denied the petition.  The Arkansas Supreme Court affirmed.  *Williams v. State*, 347 Ark. 371, 64 S.W.3d 709 (2002).

## III.   TWENTY-EIGHT U.S.C. § 2254 LIMITS THE AUTHORITY OF THIS COURT IN ITS REVIEW OF WILLIAMS'S CASE.

Section 2254 of Title 28 of the U.S. Code permits a prisoner in state custody to petition a federal court for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d)(1) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

The Supreme Court explained in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), that to obtain federal habeas relief, a petitioner must first demonstrate that his case satisfies the condition set by § 2254(d)(1):

> [Section] 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-13, 120 S. Ct. at 1523 (omission in original). The purpose of § 2254(d) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 is to limit the scope of federal court review "in order to effect the intent of Congress to expedite habeas proceedings with appropriate deference to state court determinations." *Whitmore v. Kemna*, 213 F.3d 431, 433 (8th Cir. 2000).

A state-court decision will be viewed as contrary to clearly established federal law if the state court has applied a rule that directly contradicts a decision of the United States Supreme Court or has reached a result opposite to a result reached by the United States Supreme Court on materially indistinguishable facts. *Kinder v. Bowersox*, 272 F.3d 532, 537-38 (8th Cir. 2001). A state-court decision will be viewed as an unreasonable application of clearly established federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case. *Williams*, 529 U.S. at 413, 120 S. Ct. at 1523. "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409, 120 S. Ct. at 1521. "[W]e must remember that unreasonable is not the same as incorrect. The state court's application might be erroneous, in our 'independent judgment,' yet not 'unreasonable.'" *Kinder*, 272 F.3d at 538 (quoting *Williams*, 529 U.S. at 411, 120 S. Ct. at 1522).

A habeas petitioner may also seek relief on the ground that the state court made an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). The state court's findings of fact are presumed to be correct. *Id*. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id*.; *Kinder*, 272 F.3d at 538.

Before bringing his claims to this Court, a petitioner must have presented his claims in state

court. *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S. Ct. 1347, 1349, 158 L. Ed. 2d 64 (2004). The

Eighth Circuit has explained:

> A prisoner seeking a writ of habeas corpus from a federal court must first fairly present his claims to the state courts in order to meet the exhaustion requirement of 28 U.S.C. § 2254(b). We have held repeatedly that a claim has not been fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas petition have been properly raised in the prisoner's state court proceedings. We have also held that a claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim.

*Krimmel v. Hopkins*, 56 F.3d 873, 875-76 (8th Cir. 1995) (internal citations and quotation marks

omitted). "In order to fairly present a federal claim to the state courts, the petitioner must have

referred to a specific federal constitutional right, a particular constitutional provision, a federal

constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before

the state courts." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citation and internal

quotation marks omitted).

Even when a petitioner has met the exhaustion requirement, the federal court may still be

prevented from considering the federal habeas claim if it has been procedurally defaulted. "[A]

habeas petitioner who has failed to meet the State's procedural requirements for presenting his

federal claims has deprived the state courts of an opportunity to address those claims in the first

instance." *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S. Ct. 2546, 2555, 115 L. Ed. 2d 640

(1991). A claim may be lost due to procedural default at any level of state-court review: at trial,

on direct appeal, or in the course of state post-conviction proceedings. *Kilmartin v. Kemna*, 253

F.3d 1087, 1088 (8th Cir. 2001). Another judge of this Court has explained:

> A petitioner's claim may also be procedurally defaulted for failure to present the claim to the state courts entirely. "[W]here a federal habeas petitioner raises a claim which has *never* been presented in any state forum, a federal court may properly determine whether the claim has been procedurally defaulted under state law, such

that a remedy in state court is unavailable....·" *Harris v. Reed*, 489 U.S. 255, 268-270, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (O'Connor, J., concurring); 28 U.S.C. § 2254(c). In other words, if the petitioner "failed to exhaust state remedies and the [state] court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,]" for purposes of federal habeas review, the petitioner's claim is considered procedurally defaulted. *Coleman*, 501 U.S. at 735 n. 1, 111 S.Ct. 2546. Here, too, the federal court cannot consider the petitioner's claim unless the petitioner can "excuse" the procedural default.

A petitioner can "excuse" the procedural default of his claims in state court, and obtain federal habeas review of those claims, only if the petitioner can demonstrate either: (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that the failure to consider the claim will result in a fundamental miscarriage of justice, such as the conviction of one who is actually innocent. *Murray*, 269 F.3d at 898; *Fann v. Bowersox*, 247 F.3d 841, 843 (8th Cir. 2001). "Cause" for the procedural default exists, for example, when counsel has been constitutionally ineffective or when an objective, external impediment prevented counsel from complying with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). To demonstrate prejudice, a petitioner must show "not merely that the errors at trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions ... [such that he] was denied fundamental fairness at trial." *Murray*, 477 U.S. at 494, 106 S.Ct. 2639 (internal quotation and punctuation omitted).

*Noel v. Norris*, 194 F. Supp. 2d 893, 903 (E.D. Ark. 2002) (alterations in original).

Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts

provides:

If the petition is not dismissed, the judge must review the answer, any transcripts and records of state-court proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

## IV.   THE CURRENT POSTURE OF THIS CASE.

The Court has scheduled an evidentiary hearing, if needed, for the week of December 11,

2006.  In its response to Williams's amended petition, the State asks the Court to determine which

issues, if any, should be presented at an evidentiary hearing and to limit the hearing to those specific

issues.  That request is hereby granted.  For the reasons stated hereinafter, some of Williams's

claims are dismissed because they are procedurally defaulted; others are dismissed because the record is adequate to show that Williams is not entitled to relief under 28 U.S.C. § 2254; and others will be decided on the merits after an evidentiary hearing.  The Court will receive evidence on one issue: whether the ineffectiveness of Williams's lawyers at the penalty phase renders the result of the penalty phase unreliable.

## V.     WILLIAMS ASSERTS TWENTY CLAIMS FOR HABEAS RELIEF.

### A.     Claim No. 1.  The prosecuting attorneys' intentional use of peremptory strikes in a racially discriminatory manner denied petitioner a fair trial.

Williams presented this issue to the Arkansas Supreme Court in his direct appeal.  The record is sufficient to allow this Court to decide whether the Arkansas Supreme Court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  28 U.S.C. § 2254(d).  The Court will entertain any argument that the parties wish to make on this issue at the hearing scheduled for the week of December 11, 2006, but will not receive evidence.

### B.     Claim No. 2.  Errors and omissions by trial counsel during the penalty phase of the trial deprived petitioner of his constitutional rights to the effective assistance of counsel and to a fair trial.

Williams raised this issue in his Rule 37 proceeding.  The Arkansas Supreme Court quoted the following statement of the law from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the

"counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reasonable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Williams*, 347 Ark. at 376, 64 S.W.3d at 713. The supreme court held that the failure of Williams's lawyers to present mitigation evidence was "a reasonable trial strategy" and "counsel's performance did not fall below an objective standard of reasonableness." *Id*. at 379, 64 S.W.3d at 715. The court further held that Williams "failed to show what the omitted testimony was and how it could have changed the outcome." *Id*. at 380, 64 S.W.3d at 716.

Justice Robert L. Brown concurred. Justice Brown disagreed with the holding that the decision not to present mitigation evidence was a reasonable trial strategy but agreed that Williams failed to establish the prejudice element of a *Strickland* claim. *Id*. at 380-82, 64 S.W.3d at 716-18. Justice Brown stated, "It may have been a strategic decision not to call Williams to discuss his past, but it was clearly ineffective representation not to have presented this evidence through another witness such as a psychiatrist, psychologist, or social worker." *Id*. at 380, 64 S.W.3d at 716-17.

At the rule 37 hearing, Williams's lawyers testified that their trial strategy was to concede guilt in an effort to show the jury that Williams had accepted responsibility and to try to obtain mercy at the sentencing phase of the trial. Williams's lead counsel testified, "Our whole point was to try and get life without parole . . . ." Resp. Ex. E, p. 102. The lawyers testified that they discussed the strategy with Williams, and he agreed with it. As a part of that strategy, in opening statement, one of Williams's lawyers told the jury:

Marcel Williams has instructed me to tell you on November 20, 1994, he did take Stacy Errickson from that place in Jacksonville, that gas station. Drove her around and got some money from ATM machines. He took money out of her account using her cards. He had intercourse with her and ultimately ended her life.

R. 570.  At the end of his opening statement, Williams's lawyer stated:

> What we're going to ask you to do, ladies and gentlemen, is that we're going to ask you . . . to give to [Marcel Williams] what he refused to give to Stacy Errickson. That's mercy and that's life.

R. 573.  Consistent with this strategy, throughout the guilt phase of trial Williams's lawyers passed on cross-examination and allowed evidence to which they might have objected had their strategy been to pursue an acquittal.

Nevertheless, at the sentencing phase of the trial Williams's lawyers essentially presented no evidence.  They called an inmate who had once been on death row but whose sentence had been reduced to life to testify that life was more pleasant on death row than in the general population of the prison.  He was their only witness.

Williams's lawyers had evidence of a great many facts regarding Williams's background that could have been introduced as evidence of mitigation but were not.  They decided not to call Williams because of the prospect that cross-examination could bring out gruesome details about the crime and other crimes that he had committed.  They visited with Williams's mother but concluded that she could not be a witness for them.  They never considered having a psychiatrist or psychologist present a life history because they were unaware of that possibility.  Williams's lead counsel testified at the Rule 37 hearing, "The concept of using a psychiatrist or psychologist or some type of mitigation specialist to come and present a life history of the client was foreign."  Resp. Ex. E, p. 98.  After Williams's trial, his lawyers attended a class at which they learned that they could have presented the mitigation evidence through a psychologist or psychiatrist.  *Id*.  Furthermore, "Had we known that we could have used someone else [other than Williams or his mother] such as a professional . . ., we would have done that."  *Id*. at 109.

The Arkansas Supreme Court held that the decision not to present mitigation evidence was

"a reasonable trial strategy." *Williams*, 347 Ark. at 379, 64 S.W.3d at 715.  Pursuant to 28 U.S.C. § 2254(e)(1) that determination of the factual issue is presumed to be correct.  However, the record of the Rule 37 proceeding shows that Williams rebutted the presumption of correctness by clear and convincing evidence.  It is true that the decision not to call Williams or his mother was a reasonable trial strategy.  However, the failure to put on any mitigation evidence was not a strategy; it was purely the result of the fact that his lawyers, all of whom were fairly inexperienced at the time, did not know how to present the mitigation evidence.  As one of the lawyers testified, "I absolutely disagree that that was trial strategy."  Resp. Ex. E, p. 93.  Had they known that they could present the evidence through a professional, they would have done so.  *Id*. at 109.

Williams's trial lawyers made a strategic decision not to contest guilt in order to gain credibility that they would then use at the sentencing phase in an effort to avoid the death penalty. In light of the overwhelming evidence of Williams's guilt, the decision not to contest guilt was a reasonable trial strategy.  However, having made that decision, it was incumbent upon Williams's lawyers to do something at the sentencing phase; but, in effect, they did nothing at the sentencing phase.  As one of Williams's lawyers testified, "we didn't do anything we should have done for the sentencing phase," and "we offered nothing for this man."  Resp. Ex. E, pp. 83, 94.  Again, doing nothing at the sentencing phase was not a strategy.  The strategy was to concede guilt in an effort to avoid the death penalty, but Williams's lawyers did not know how to present the mitigation evidence to pursue that strategy at the sentencing phase.

The factual finding by the Arkansas Supreme Court that Williams's lawyers' decision not to introduce mitigation evidence was "a reasonable trial strategy" is clearly erroneous.  The record establishes by clear and convincing evidence that that factual finding is incorrect.  That factual finding is the linchpin of the Arkansas Supreme Court's holding that Williams's lawyers were not

ineffective at the sentencing phase of the trial.  That holding is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2).  Williams has established the first element of a claim for ineffective assistance of counsel under *Strickland* and 28 U.S.C. § 2254.

However, the record is inadequate to reach the same conclusion as to the prejudice prong of the claim of ineffective assistance of counsel under *Strickland*.  Pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases, the Court has concluded that an evidentiary hearing is needed on the issue of whether the errors of Williams's trial lawyers at the sentencing phase renders the result of the sentencing phase reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.  The Court will receive evidence on that issue at the hearing scheduled for the week of December 11, 2006.

**C.      Claim No. 3.  Errors and omissions by trial counsel during the guilt phase of the trial deprived petitioner of his constitutional rights to the effective assistance of counsel and to a fair trial.**

Williams asserts several bases for his contention that his lawyers were ineffective at the guilt phase of the trial.  He cites three occasions during the voir dire in which he contends that his lawyers failed to protect his constitutional right to trial by a fair and impartial jury.  He contends that his lawyers "unreasonably and prejudicially failed to subject the state's guilt phase evidence to meaningful adversarial testing."  He cites several instances in which his lawyers failed to object to incriminating or otherwise prejudicial evidence.  He also objects to the nature of his lawyer's argument in opening statement and the failure of his lawyers to object to the prejudicial atmosphere in the courtroom.

None of these arguments was presented to the state courts.  None of them relies on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence.  28 U.S.C. § 2254(e)(2)(A).

12

Furthermore, the facts underlying these claims are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). Williams's Claim No. 3 will be dismissed because it is procedurally defaulted and the default is not excused.

>    D.    Claim No. 4.    Petitioner was denied a fair trial before an impartial tribunal.

Williams argues that the trial judge should have been disqualified because he was dating and later married one of the attorneys who worked in the office of the Pulaski County Prosecuting Attorney. This argument was not presented to the state courts. It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A). Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). Williams's Claim No. 4 will be dismissed because it is procedurally defaulted and the default is not excused.

Moreover, the transcript shows that the trial judge was fair and impartial throughout the trial. In fact, other than comments by the trial judge on *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), Williams does not criticize the judge's conduct. The comments about *Batson* do not in any way show bias or a lack of impartiality by the trial judge. There is no merit to Claim No. 4. Claim No. 4 will be dismissed because it has been procedurally defaulted and because it is without merit.

13

**E.**   **Claim No. 5.  Petitioner's right to a fair trial was violated by the presence on his jury of individuals who could not sit as fair and impartial jurors.**

Williams contends that the trial court erred in failing to remove prospective jurors Barfield, Benton, and Jamison upon request of counsel.  That argument was presented to the Arkansas Supreme Court on direct appeal.  The record is sufficient to permit the Court to decide whether the requirements of 28 U.S.C. § 2254(d) are met here.  Consequently, the Court will hear argument on this issue at the hearing to be conducted during the week of December 11, 2006, but will not receive evidence on this issue.

In addition, Williams asserts that the trial judge erred by not removing prospective jurors Henderson, Sipes, and Bernard *sua sponte*.  This argument was not presented to the state courts.  It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A).  Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense.   28 U.S.C. § 2254(e)(2)(B). Williams's Claim No. 5 will be dismissed as to Henderson, Sipes, and Bernard because it is procedurally defaulted and the default is not excused.

**F.**   **Claim No. 6.  Petitioner's constitutional rights were violated in this capital case due to the unfairly prejudicial atmosphere in which his trial and sentencing took place.**

Williams makes several arguments pertaining to the prejudicial atmosphere within which his trial was conducted.  None of these arguments was presented to the state courts.  None of them relies on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence.  28 U.S.C.

14

§ 2254(e)(2)(A).  Furthermore, the facts underlying these claims are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense.  28 U.S.C. § 2254(e)(2)(B).  Williams's Claim No. 6 will be dismissed because it is procedurally defaulted and the default is not excused.

G.     **Claim No. 7.  The admission into evidence of the statement illegally obtained from petitioner by law enforcement violated petitioner's constitutional rights.**

This claim was addressed by the Arkansas Supreme Court on direct appeal.  The record is sufficient to permit this Court to decide whether the requirements of 28 U.S.C. § 2254(d) have been met.  The Court will entertain any argument that the parties wish to make on this issue at the hearing scheduled for the week of December 11, 2006, but will not receive evidence.

H.     **Claim No. 8.  Petitioner was denied a fair trial due to the misconduct of his prosecutors.**

Part of Williams's claim of prosecutorial misconduct relates to his allegation that the prosecutor used her peremptory strikes in a racially discriminatory manner.  That argument substantially repeats the argument made in Claim No. 1 and will be subsumed within that claim.

Williams also claims that the prosecutors submitted false and misleading testimony and made impermissible appeals to passion and prejudice.  None of these arguments was presented to the state courts.  None of them relies on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A).  Furthermore, the facts underlying these claims are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense.  28 U.S.C. § 2254(e)(2)(B).  Williams's Claim No. 8 will be dismissed because it is procedurally defaulted and

15

the default is not excused.

I.     **Claim No. 9.    Allowing the jury to consider as an aggravating circumstance the felony conviction that petitioner received at age 15 violated the Eighth and Fourteenth Amendments.**

This argument was not presented to the state courts.  It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence.   28 U.S.C. § 2254(e)(2)(A). Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense.  28 U.S.C. § 2254(e)(2)(B).  Williams's Claim No. 9 will be dismissed because it is procedurally defaulted and the default is not excused.

J.     **Claim No. 10.  Petitioner's conviction and sentence were the product of race discrimination.**

Williams raised this argument on direct appeal to the Arkansas Supreme Court.  The Arkansas Supreme Court considered and rejected the argument.  *Williams*, 338 Ark. at 115-16, 991 S.W.2d at 575.  The decision of the Supreme Court of Arkansas is not contrary to or an unreasonable application of clearly established federal law, nor is it a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Claim No. 10 is dismissed.

K.     **Claim No. 11.  Petitioner's death sentence was improperly supported by the jury's finding that the killing took place for purposes of pecuniary gain.**

Williams argues that the imposition of the death penalty in his case is unconstitutional due to the State's use of the same felony charges to support his conviction on a felony murder theory and to support one of the aggravating factors.  He notes that pecuniary gain was an element of crimes

of which he was convicted and an aggravating factor that the jury could and did find as a basis for imposing the death penalty.  Thus, he argues the submission of the pecuniary gain aggravating factor at the sentencing phase constituted impermissible doublecounting.  Although Williams argued on direct appeal that the State failed to prove capital murder, he did not argue on direct appeal or in his Rule 37 proceeding that the use of pecuniary gain as an element of the underlying offense and as an aggravating factor at the sentencing phase rendered the death penalty unconstitutional.  This argument was not presented to the state courts.  It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence.  28 U.S.C. § 2254(e)(2)(A).  Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found imposed the death penalty.  28 U.S.C. § 2254(e)(2)(B).  Williams's Claim No. 11 will be dismissed because it is procedurally defaulted and the default is not excused.

Moreover, the Eighth Circuit has explicitly rejected the doublecounting argument.  *Cox v. Norris*, 133 F.3d 565, 571 (8th Cir. 1997); *Wainwright v. Lockhart*, 80 F.3d 1226, 1232 (8th Cir. 1996); *Perry v. Lockhart*, 871 F.2d 1384, 1392-93 (8th Cir. 1989).

**L.    Claim No. 12.  Errors and omissions by state appellate and post-conviction counsel deprived petitioner of his constitutional rights to effective assistance on appeal and on state collateral review.**

Williams's argument that his lawyers were ineffective on direct appeal was not presented to the state courts in his Rule 37 petition.  It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence.  28 U.S.C. § 2254(e)(2)(A).  Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional

17

error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). This aspect of Williams's Claim No. 12 will be dismissed because it is procedurally defaulted and the default is not excused.

As to the claim that Williams's post-conviction counsel was ineffective, the United States Supreme Court has held that there is no right to an attorney in state post-conviction proceedings and that a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. *Coleman*, 501 U.S. at 752, 111 S. Ct. at 2566. Furthermore, 28 U.S.C. § 2254(i) provides, "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." That provision makes no exception for post-conviction proceedings in which the defendant is represented by court-appointed counsel, as Williams was here.

Furthermore, the record does not show that Williams's lawyers were ineffective on appeal or at the post-conviction stage. To prevail on a claim of ineffective assistance of counsel, a defendant must show that the lawyer's performance fell below professional standards of competence and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. Williams points to numerous issues that were procedurally defaulted, but he does not show that any of those claims have merit. Because he has not shown that any of the defaulted issues have merit, he has not shown that it was incompetent for his lawyers not to raise them on appeal or in the Rule 37 proceeding.

Williams's Claim No. 12 is dismissed.

**M.     Claim No. 13.  Petitioner was denied a fair trial due to the cumulative effect of the constitutional errors that infect his trial and sentence.**

This argument was not presented to the state courts. It does not rely on a new rule of

constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A). Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). Williams's Claim No. 13 will be dismissed because it is procedurally defaulted and the default is not excused.

In addition, the Eighth Circuit has rejected this argument. *Wainwright*, 80 F.3d at 1233.

**N.      Claim No. 14.  Petitioner's death sentence is constitutionally prohibited because it cannot be carried out without the infliction of cruel and unusual punishment.**

This argument was not presented to the state courts. It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A). Furthermore, the facts underlying these claims are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). As a habeas corpus claim, this Claim No. 14 is procedurally defaulted and is hereby dismissed. However, at an appropriate time Williams may be able to assert this claim in an action filed pursuant to 42 U.S.C. § 1983. *See Hill v. McDonough*, 547 U.S. ___, No. 05-8794, 2006 WL 1584710 (June 12, 2006).

**O.      Claim No. 15.  Petitioner's capital trial was conducted before state judicial officers dependent upon popularly-contested elections.**

This argument was not presented to the state courts. It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A).

19

Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B). Williams's Claim No. 15 will be dismissed because it is procedurally defaulted and the default is not excused.

**P.      Claim No. 16.  Insufficient evidence was presented to support the finding of the aggravating circumstance that the murder was especially cruel and depraved.**

This argument was presented in Williams's direct appeal and rejected by the Arkansas Supreme Court. *Williams*, 338 Ark. at 109, 991 S.W.3d at 571. The decision by the Arkansas Supreme Court is not contrary to nor an unreasonable application of clearly established federal law; nor is it a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, Claim No. 16 is dismissed.

**Q.      Claim No. 17.  Petitioner's death sentence violates the constitutional prohibition on cruel and unusual punishment.**

The Supreme Court has rejected this argument. *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Claim No. 17 is dismissed.

**R.      Claim No. 18.  The sentencing provisions of Arkansas' capital murder statutes violate the constitution.**

This argument presents a question of law. The Court will entertain any argument that the parties wish to make at the hearing scheduled for the week of December 11, 2006, but will not receive evidence.

**S.      Claim No. 19.  Petitioner's sentence is invalid under international law.**

This argument was not presented to the state courts. It does not rely on a new rule of constitutional law made retroactive to cases on collateral review or a factual predicate that could not have been discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A).

20

Furthermore, the facts underlying this claim are not sufficient to establish by clear and convincing evidence that but for constitutional error no reasonable factfinder would have found Williams guilty of the underlying offense.  28 U.S.C. § 2254(e)(2)(B).  Williams's Claim No. 19 will be dismissed because it is procedurally defaulted and the default is not excused.

> **T.  Claim No. 20.  Should petitioner become incompetent to be executed, his death sentence could not be carried out.**

Claim No. 20 does not present an issue that is ripe for adjudication.  Claim No. 20 will be dismissed.

## CONCLUSION

Williams's Claim Nos. 3, 4, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 19, and 20 are hereby dismissed.  Claim No. 5 is dismissed in part.  At the hearing scheduled for the week of December 11, 2006, the Court will receive evidence on the issue of whether the ineffectiveness of Williams's attorneys at the sentencing phase of the trial renders the result unreliable so that he has a valid claim of ineffective assistance of counsel under *Strickland* and will entertain argument on all claims that are not dismissed.

IT IS SO ORDERED this 19th day of June, 2006.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE